IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BECKY BARNES-BOERS,                     No. 2:13-CV-1827-WBS-CMK

    Plaintiff,

  vs.                                                              ORDER

TRU 2005 REI, LLC,

    Defendant.

_____/

        Plaintiff brings this civil action. The undersigned conducted a settlement conference on February 26, 2014. Plaintiff, Becky Barnes-Boers, appeared with counsel, Tamara Zaki, Esq., from the Center for Disability Access located in San Diego, California. Danielle Torok, corporate representative of defendant, TRU 2005 REI, LLC, was present and appeared with counsel Jerry J. Deschler, Esq., of Jackson Lewis P.C. of Sacramento, California. The case did not settle.

/ / /

/ / /

/ / /

/ / /

## I.  PROCEDURAL BACKGROUND

Following the completion of the settlement conference, the court in open session indicated that it intended to issue an Order to Show Cause to plaintiff's counsel why the court should not impose monetary sanctions relating to her vexatious conduct and lack of preparation at the settlement conference.  The court requested that defendant and defendant's counsel submit a summary of attorney's fees and expenses related to their appearance at the settlement conference.  The defendant has submitted said attorney's fees and expenses in the sum of $9,349.44.  (Docs. 13 and 15).

Prior to the court's issuance of the Order to Show Cause, plaintiff submitted a response entitled "Plaintiff's Opposition to Defense Request for Sanctions" (Opposition to Sanctions).  Since plaintiff has preemptively responded to the anticipated Order to Show Cause, the court finds that the personal attendance of plaintiff's counsel is not necessary and the issue of imposing sanctions stands submitted.  The court has considered defendant's Request for Sanctions (Doc. 13); plaintiff's Opposition to Sanctions (Doc. 14) and defendant's Response to Opposition (Doc. 15).  The court initially intended to meet with plaintiff's counsel separately if the issue of confidentiality of the settlement conference was an issue.  Since both plaintiff and defendant have chosen to freely summarize their recollection of events, however, the court feels free to  address the issue of sanctions as follows.

## II.  LEGAL AUTHORITY

The district court has the authority, both under its inherent power and under 28 U.S.C. § 1927, to impose monetary sanctions when counsel has willfully abused judicial processes or otherwise conducted litigation in bad faith.  See Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); see also Toombs v. Leone, 777 F.2d 465, 471 (9th Cir. 1985).  Section 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof  who so multiplies the proceedings in any case

1  unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,
2  expenses, and attorneys' fees reasonably incurred because of such conduct.  This court's Local
3  Rule 184(a) sets forth the procedures to be followed when such sanctions are being considered.
4  Specifically, the rule provides: "In the event any attorney subject to these Rules engages in
5  conduct that may warrant discipline or other sanctions, any Judge or Magistrate Judge may, after
6  reasonable notice and opportunity to show cause to the contrary, take any other appropriate
7  disciplinary actions against the attorney. . . ."

### III.  DISCUSSION

Plaintiff brings this civil action pursuant to pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101, et seq.  Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Prohibited discrimination includes "a failure to remove architectural barriers, . . . where such removal is readily achievable." Id. § 12182(b)(2)(A)(iv).  As explained by the Ninth Circuit, the elements of a Title III discrimination claim are:  (1) plaintiff's "disability," (2) the defendant's private operation of a place of "public accommodation," and (3) defendant's denial of public accommodations because of plaintiff's disability.  See Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).  Where the plaintiff alleges denial of public accommodations because of an architectural barrier, the plaintiff must specifically show that: (a) an ADA-prohibited architectural barrier exists. and (b) the barrier's removal is readily achievable.  See Pickern v. Pier 1 Imports (U.S.), Inc., 339 F. Supp. 2d 1081, 1085 (E.D. Cal. 2004), aff'd, 457 F.3d 963 (9th Cir. 2006); Parr v. L & L Drive-Inn Restaurant, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).  For the first step of the analysis, the court turns to the Department of Justice's ADA Accessibility

Case 2:13-cv-01827-WBS-CMK   Document 16   Filed 04/10/14   Page 4 of 12

Guidelines ("ADAAG"). See 28 C.F.R. Pt. 36, App. A. Well-established precedent confirms that the ADAAG provide the standard for determining whether a defendant has violated the ADA. See Hubbard v. 7-Eleven, Inc., 433 F. Supp. 2d 1134, 1138 (S.D. Cal. 2006) (explaining that ADAAG "provide valuable guidance for determining whether an existing facility contains architectural barriers" (internal quotations omitted)); Wilson v. Pier 1 Imports (US), Inc.., 439 F. Supp. 2d 1054, 1066 (E.D. Cal. 2006) ("compliance with the ADAAG, and not another standard, constitutes compliance with the ADAAG requirements").

       The ADAAG regulations are divided into three categories. The first category of regulations requires that newly-constructed public accommodations must comply with specific accessibility requirements set forth in the ADAAG. See 28 C.F.R. Pts. 36.401, 36.406. The second category of regulations concerns the accessibility requirements imposed on public accommodations altered after January 26, 1992. See id. The third category requires the removal of architectural barriers in preexisting public accommodations. See 28 C.F.R. Pt. 36.304. "Under the ADA's continuing barrier removal obligation, it is discriminatory for owners, operators, lessors or lessees to fail to remove architectural barriers that deny disabled persons the goods and services offered to the general public." Wilson v. Pier 1 Imports (US), Inc., 439 F. Supp. 2d 1054, 1066 (E.D. Cal.2006).

       Defendant in this case owns or operates a shopping center in southeast Chico, California, which is the location of the Toys "R" Us ("TRU") store. The TRU store was constructed prior to 1991. The TRU store is bordered on the north by East 20th Street, to the west by Business Lane, and to the east by Forest Avenue. Both vehicles and pedestrians can access the TRU store by each of these arteries. Sidewalks also parallel 20th Street, Business Lane, and Forest Avenue that permit wheelchair access into the parking areas that serve the TRU store and several other businesses located within the same square block.

/ / /

/ / /

4

From 20th Street, access by way of wheelchair to the TRU store can be accomplished by turning south from the sidewalk on 20th Street unto a sidewalk leading to the entrance of the TRU store parking area. Entering the TRU parking area from the sidewalk is accomplished by exiting on a sloped ramp unto a paved area that leads into any one of several routes that allow access to both vehicles or pedestrians. The paved area adjacent to the ramp is striped and marked in three locations requiring vehicles to stop for pedestrians entering the parking area. This access to the TRU store shall be referred to as the 20th Street access. From Business Lane, vehicles and pedestrians can access the TRU store by turning east from Business Lane into the general parking area that eventually leads to the TRU store by any one of several different routes (Business Lane access). At Forest Avenue, pedestrians and vehicles can access the TRU store by turning west off Forest Avenue onto a paved entry way and then traveling to and entering the TRU parking area at any one of several different routes (Forest Avenue access).

Plaintiff does not allege ADA violations or barriers exist at the TRU store entrance, namely at the south end of the TRU parking area where it joins with the store front. She also does not contend that the TRU parking area that provides her access to the TRU store is not level or is in a state of disrepair. As mentioned above, an individual desiring access to the TRU store from either 20th Street, Business Lane, or Forest Avenue can accomplish the same by traveling by way of any one of a half dozen routes which are all paved, sufficiently wide, and level.

In her complaint, plaintiff describes the access problem as "there [being] no accessible route of travel from the boundary of the site to the accessible building entrances." (Doc. 1; Compl. ¶ 8). During the settlement conference, plaintiff's counsel described the problem as not having a dedicated or separate route through the TRU parking area to accommodate wheelchair or handicap users, or in other words a route that would not have to be shared with vehicles accessing or utilizing the TRU parking area. Plaintiff's counsel was only able to address the alleged access problems from 20th Street to the TRU store entrance. She had

not investigated either the Business Lane or Forest Avenue access routes to determine whether they were ADA compliant.

The undersigned met with defendant's representative and her counsel numerous times during the settlement conference. Ms. Torok had traveled to Redding from New Jersey. She and her counsel possessed and displayed a thorough understanding of the facts and law surrounding the case and were prepared throughout the conference to discuss all matters, including injunctive relief and monetary settlement. In addition to submitting a Settlement Conference Statement addressing the key issues, they were able to provide the court with aerial photographs and site plans depicting the available routes utilized by vehicles and pedestrians.

In contrast, the discussions with plaintiff and her counsel were mired from the beginning due to counsel's lack of preparation. She is apparently an associate of the Center for Disability Access law firm, but neither a signatory to the complaint nor Settlement Conference Statement. She is not listed as plaintiff's attorney on any court documents except the Opposition to Sanctions. She choose to not personally visit the TRU store site or even familiarized herself by referencing any type of secondary source such as maps, Google Earth, or aerial photographs. She was unfamiliar with the boundaries to the TRU store and was unaware that it had been constructed prior to 1991. As such, she struggled throughout our discussions in not only identifying and discussing the alleged ADA violation, but in failing to provide any legal authority to support the existence thereof. The Settlement Conference Brief also provided little assistance to the court. It provided no authority to support plaintiff's claim that a separate or dedicated wheelchair access across the parking area was required under the ADA. The plaintiff submitted only one small photograph which depicted the area running south from the sidewalk area at the 20th Street access of the parking area to the front of the TRU store. Curiously, the photo also supported the existence of several wide, paved and unencumbered access routes leading to the TRU store entrance which belie plaintiff's claim. Although not always necessary, plaintiff also did not possess or offer any type of customary report or ADA compliance or accessibility study

which may have aided the court in understanding the alleged ADA violation or barrier.[1]

To be clear, plaintiff contends that her wheelchair access to the TRU store from 20th Street must be separate and not to be shared with vehicles utilizing the TRU parking area. If true, this would require defendant to construct or designate a separate route or pathway through the TRU parking area to the store entrance. Of course, if this was indeed a requirement of the ADA, it would virtually effect every commercial parking lot or area in the country.

In <u>Wilson v. Pier 1 Imports (US), Inc.</u>, <u>supra</u> at 1071, the court held that no such requirement is imposed by the ADA..

> "Plaintiff claims that a public accommodation must provide access from the public sidewalks to the store's entrance, and they claim there is no such access here. Defendants claim that there is a 48–inch wide continuous unobstructed path between the store and public sidewalk. ADAAG defines an accessible route as "A continuous unobstructed path connecting all accessible elements and spaces of a building or facility.... Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts." ADAAG 3.5 "Definitions" (emphasis added). Plaintiff disputes the existence of an access way, but it appears that he is basing this on the belief that there needs to be a separate route other than via the parking lot. There does not appear to be any such requirement in any of the regulations plaintiff cites."

Plaintiff's counsel was unaware of the court's holding in the <u>Wilson</u> case. I informed her that it appeared to be the controlling authority and that I was unable to find any case law that would support her interpretation. I then inquired whether she was aware of any case authority that would support her position. She was aware of none.

/ / /

---

[1] Possibly the lack of information or preparation can be attributed to plaintiff's counsel website. (http://potterhandy.com/disabilityaccess.php5). By accessing this site, potential clients can provide basic simple information on line which can latter be used in the bringing of an ADA civil action. Specifically, one of the questions posed is to describe the "violations/barriers at the business/property." The court here is struck by the lack of specificity of the alleged violation described in the complaint and the Settlement Conference Statement. Since plaintiff offers no accessibility or ADA compliance report or study, the court is left to speculate that the allegations in the complaint were simply taken from the responses to the website inquiries without much follow-up or minimal investigation. Plaintiff's counsel was ill prepared to fill this vacuum.

I then explored whether plaintiff or her counsel had investigated whether the Business Lane or Forest Avenue accesses were ADA compliant.  Plaintiff's counsel had not visited the site, and neither she nor plaintiff was in a position to discuss any other potential wheelchair access routes other than via 20th Street.  Indeed, plaintiff's failure to address alternative access from Business Lane and Forest Avenue was problematic since the ADA only requires that one accessible route be provided.[2]

Knowing that Ms. Torok had traveled cross country to resolve this dispute, the undersigned informed plaintiff's counsel that the court would set aside additional time during the afternoon to afford her an opportunity to research the access issue since it was the only ADA violation or barrier alleged in the complaint and that the issue of statutory damages would necessarily rise or fall on its existence.  Within a short period of time,  plaintiff's counsel notified the court she was set to reconvene the settlement conference.  Although she was unable to find any case law to support her position, she provided the court with a letter (DOJ Opinion letter) dated May 26, 1992, from a Special Legal Counsel of the Office on the ADA to an unrelated company located in Norwalk, Connecticut.  She attaches a copy of said letter as an exhibit to her Opposition to Sanctions.  (Doc. 14).  As best as can be gleaned, a private company located in Connecticut that was contemplating constructing a parking lot at some type of proposed medical facility had requested an opinion from legal counsel to the ADA in 1992 regarding the necessity of a separate route for handicapped access.  As defendant's counsel correctly notes, the letter is unsigned, lacks binding legal authority and by the very text of the letter states that its contents is to provide only "informal guidance."

/ / /

/ / /

---

[2] See, ADAAG §§ 4.1.2(1), 4.3.2(1), 4.1.4.1; and 28 C.F.R. Pt. 36.304(c)(1).  These all generally provide that there must be at least one route "provided within the boundary of the site from public transportation stops, accessible parking spaces, passenger loading zones if provided, and public streets or sidewalks, to an accessible building entrance."

Unsure whether plaintiff's counsel grasped the dubious nature of the letter or the frailty of her claim based upon its reliance, I again afforded her an additional opportunity to conduct further research and to contact superiors in her office to assist her in the assessment of the case. Again, and well within an hour, plaintiff's counsel informed the court that she was ready to proceed. When we again met, she informed me she was unable to provide any additional authority.

When asked what she believed was necessary to resolve the case she continued to assert that defendant should be required to designate or construct a separate route or path that would accommodate wheelchair usage. Since plaintiff's counsel was not familiar with the site lay out and had not prepared to discuss this aspect of the case, neither plaintiff nor counsel had any recommendations as to where the alleged required route should be placed or constructed. The court then cautioned plaintiff's counsel that requiring a defendant to construct an improvement not demanded or otherwise required under the ADA (solely to appease plaintiff) was not an appropriate approach to resolve the present dispute.

Plaintiff's counsel next suggested that defendant could undertake marking or painting the pavement at the point where the end of the sidewalk leading from 20th street meets the TRU parking area. Plaintiff's counsel was unsure whether this area was located within defendant's boundaries which would make injunctive relief difficult, at best. More importantly, however, the issue of signage, or lack thereof, was not alleged in the complaint as being an ADA violation or barrier.

Had plaintiff's counsel spent the necessary time to either personally inspect or familiarize herself with this area, she would have discovered that the pavement was already marked at three separate conspicuous locations to alert oncoming vehicles to stop. Within defendant's boundary and separating the TRU parking area from other business areas to the west exists a long enclosed concrete divider that runs perpendicular to 20th Street and the front of the TRU store. The east side of this divider is paved and runs almost directly to the entrance to the

TRU store.  There are no parking stalls on the east side of this divider and it is located in an area lying to the west of where vehicles travel and access existing parking spaces.  It encompasses an easily identifiable route which would allow a wheelchair user the ability to travel to and from the TRU store entrance outside the route of travel of vehicles accessing and utilizing the parking area.  Again, had plaintiff's counsel inspected the premises, or even familiarized herself by referring to secondary sources such as maps, Google Earth, or aerial photos, she would have discovered the existence of the type of route she now claims is required.

It is also unclear what portion of the route between the sidewalk termination and store entrance that plaintiff maintains is a barrier or hindrance to her access.  The TRU store is one of several business establishments located within the same city block.  Access to almost all of these establishments is accomplished by using 20th Street, Business Lane, or Forest Avenue.  The entire block consists of businesses and the several large parking areas that are joined by connecting routes.  These routes are not city streets.  If plaintiff believes that these connectors or routes possess some type of ADA violation or barrier, she has not so alleged.  Such connectors or routes are located outside the exterior boundaries of defendant's property and not subject to its control.

When I questioned plaintiff's counsel concerning her insistence on the necessity of a separate route or path in light of the court's decision in <u>Wilson</u>, she stated that if defendant believed that such an access was not required under law, it could file a summary judgment motion and have the matter latter addressed in that context.  Although a charitable interpretation of this comment would suggest that plaintiff's counsel was seeking further time to reconnoiter, the court's observation was that the defendant was simply being warned to pay up now, or pay more latter because of the general reality that it would ultimately be responsible for plaintiff's attorney fees if any type of ADA violation was established.  Although the ADA makes an award of attorney fees to the prevailing party discretionary, the path a defendant must pursue to obtain such a ruling in his favor is almost insurmountable.  See <u>Hubbard v. SoBreck, LLC</u>, 531 F.3d

983, 985 (9th Cir.2008) (citing 42 U.S.C. § 12205).  A prevailing defendant may recover attorney fees if the plaintiff's claims were "frivolous."  Id.; see also Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1154 (9th Cir. 1997).   Yes, it is true that defendant will almost certainly be required to pay more later, but it should not be required to pay for the attorney's fees and expenses relating to this settlement conference which was doomed from its inception due to plaintiff's counsel's bad faith and lack of preparation.

In her settlement conference statement, plaintiff approximates her damages at $30,000.  During the settlement conference, plaintiff refused to lower this demand.  Defendant, however, continued to offer the amount it had discussed with plaintiff's counsel on an earlier occasion and would have considered increasing this amount if plaintiff would come off her demand of $30,000.  The court finds that plaintiff's refusal to do so, coupled with the problems associated with the dubious nature of her alleged ADA violation, was unreasonable under the circumstances.  The court concludes that plaintiff and plaintiff counsel's acted in bad faith.[3]

---

[3] Between July 30, 2013 and September 4, 2013, the plaintiff filed 10 separate ADA actions.  See Barnes-Boers v. Tozier, 2:13 cv 01555; Barnes-Boers v. Halimi, 2:13 cv 01556; Barnes-Boers v. Evergreen Orchard, LLC., 2:13 cv 01580; Barnes-Boers v. Chico Crossroads, L.P., et. al., 2:13 cv 01581; Barnes-Boers v. Singh, 2:13 cv 01582; Barnes-Boers v. Silver Shield, LLC., 2:13 cv 01583; Barnes-Boers v. Tractor Supply Company, 2:13 cv 01585; Barnes-Boers v. Cash & Carry Stores, LLC., et. al., 2:13 cv 01586; Barnes-Boers v. Ullrich, 2:13 cv 01587; Barnes-Boers, v. TRU 2005 REI, LLC., 2:13 01827.  As with the present case, similar types of oblique access violations are alleged in Evergreen Orchard, Chico Crossroad and Silver Shield.  In Tozier, Singh, Evergreen Orchard, Chico Crossroads, Cash & Carry and Ullrich, plaintiff alleges that she utilizes a specially equipped van.
 This case apparently pertains to only the alleged violations or barriers that plaintiff encounters when she chooses not to drive.  Otherwise, by choosing to drive she could access the TRU store via 20th Street, Business Lane, or Forest Avenue and thereafter park in any number of designated handicapped parking spaces.  Thus, the damages plaintiff claims here relate to her numerous visits to the store on occasions where she has chosen not to drive.  Certainly, the court does not suggest that plaintiff must drive to the TRU store on all of her visits.  It simply observes that plaintiff's settlement demand of $30,000 (which she refused to lower during the settlement conference) equates to numerous visits (more than 7) in which she claims barriers were encountered.  Although the court does not necessarily conclude that plaintiff's continued desire to encounter the barriers she describes instead of driving is unreasonable, it does find unreasonable her refusal to lower her settlement demand under these circumstances.  See Yates v. Bacco, 2013 WL 1089101 (N.D. Cal. March 17, 2014) (discussing plaintiff's duty to mitigate and stacking statutory damages).

For the foregoing reasons, requiring plaintiff's counsel to pay defendant's expenses and attorney fees is appropriate.  Plaintiff's counsel was unprepared to discuss either the facts or authority relating to the case and her insistence in seeking a remedy for a violation that she struggled to explain coupled with her refusal to lower her original settlement demand constitutes bad faith.  As such, the appearance by defendant and her counsel resulted in a waste of time for all parties involved.  The defendant has submitted attorney's fees and expenses in the sum of $9,349.44.  A small portion of these expenses relate to fees that were incurred following the settlement conference which the court finds were gratuitous and unsolicited.  (Doc. 15).  The court finds the sum of $ 8,500 to be reasonable.

### IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's counsel pay defendant the sum of $8,500 relating to attorney's fees and expenses associated with the settlement conference held on February 26, 2013; and

2. Said sum shall be paid within 30 days following the date of this order.

DATED: April 10, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE